**SO ORDERED.**

**SIGNED this 18th day of June, 2019.**



_____
Dale L. Somers
United States Chief Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

Ronald Martin Kane,

               Debtor.

Case No. 19-40170-13

## Memorandum Opinion and Order Sustaining
## Trustee's Objection to Confirmation

Debtor Ronald Martin Kane has general unsecured debt that has reached an impressive amount: $193,741.46. Over sixty six percent of that large number—$128,612.02—is nondischargeable student loan debt. Debtor has proposed a Chapter 13 repayment plan that pays his student loan debt after his administrative expenses and secured and priority creditors, but before other unsecured creditors. In other words, Debtor proposes treating his student loans as a special class that will be paid in advance of his other

general unsecured debt. The Chapter 13 Trustee, Jan Hamilton, objects to Debtor's proposal.[1]

The Court concludes that Debtor's proposed discrimination in favor of his student loan claims is "unfair" discrimination under 11 U.S.C. § 1322(b)(1).[2] Debtor has not carried his burden to show that the discriminatory provisions of his proposed plan are fair, and as a result, his plan cannot be confirmed as proposed. The Trustee's objection to confirmation of Debtor's plan on this basis is sustained.

## I. Background and Procedural History

Debtor filed his Chapter 13 bankruptcy petition on February 27, 2019, and his proposed Chapter 13 payment plan the same date. Debtor's Schedule A/B included a 2014 Ford F150, valued at $24,500, various other household supplies and firearms, and a personal injury claim being handled by an attorney separate from his bankruptcy counsel. Debtor listed secured debt of $31,000 to GM Financial for the Ford F150 and $1000 to Mattress Firm for a mattress/bed set.[3] Debtor's Schedule E/F listed priority claims to both the IRS

---

[1] Debtor appears by Frank Taff, and the Chapter 13 Trustee appears personally.
[2] All future statutory references will be to title 11 of the United States Code, unless otherwise specified.
[3] Debtor listed the debt to Mattress Firm as "lease to own." On Schedule G, Debtor then elaborated that the parties have a one-year lease-to-own contract, and Debtor should complete his payments within six months.

2

Case 19-40170    Doc# 32    Filed 06/18/19    Page 2 of 16

and the Kansas Department of Revenue for 2015 through 2018 taxes for $1400 and an unknown amount, respectively. Other nonpriority, unsecured debt totaled $15,0852—of that, $119,710 of student loans were listed, and $31,142 of other general unsecured debt was listed. Debtor's Schedules I and J show a net monthly income of $6377.52, but Debtor is an auto salesman, and his sales commissions are highly variable. Debtor's monthly expenses are $3078.12, leaving him a net surplus of $3299.40 to make his plan payment. Debtor is above median income, and must commit to five years of plan payments.[4]

Debtor's proposed plan is for a monthly payment of $3000 per month, which Debtor proposes will pay attorney's fees, the filing fee, the priority taxes, and the debts to GM Financial on the Ford F150 and to Mattress Firm on the mattress/bed set. Debtor's plan then includes the following non-standard provision: "Section 14 General Unsecured Creditors. Student loans will be paid without interest and after administrative expenses, secured and priority creditors in advance of other unsecured creditors."[5]

---

[4] A plan's "applicable commitment period" is defined by § 1325(b)(4) and requires three years of payments of the debtor's "projected disposable income" unless the debtor's current monthly income is higher than the median family income for a household of similar size. Debtor's income is above median, and his applicable commitment period is, therefore, five years.
[5] Doc. 2 p. 6.

The Trustee objected to Debtor's plan on April 2, 2019 based on unfair discrimination among classes within the plan (§ 1322(b)(1)) and other grounds. The parties have briefed only the unfair discrimination issue and the Court therefore confines its consideration to that objection.

On April 16, 2019, the IRS filed an amended proof of claim, and that amended claim differs substantially from Debtor's projections at filing. The IRS claims a total owed of $60,562.38, of which $3881.75 is secured bearing interest at 6% annually, $3272.75 is priority, and $52,407.89 is general unsecured. A claim for $128,612.02 from the student loan creditor has been filed. This amount is also different than Debtor's estimate at filing. The Trustee calculates Debtor's total "pool" amount to be paid to general unsecured creditors as $137,625.80.[6] In order to pay the Trustee's pool amount, Debtor's plan payments would need to increase to $3370 per month.

Assuming payments at $3370 per month, the Trustee calculates that if Debtor's student loan claims are paid pro rata along with other general unsecured claims, the pro rata share to all unsecured claims would be

---

[6] § 1325(b)(2)(A)—(B). Because the Trustee has objected to Debtor's proposed plan, Debtor's plan may not be confirmed unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1)(B). The Trustee reports in his brief that he does not contest Debtor's plan calculation of $1975 for the best interest of creditor's test. § 1325(a)(4).

71.03%, the student loan creditor would receive approximately $91,362.47, and the other general unsecured claimants would share the balance of approximately $46,263.33. If, however, the student loan is paid 100% from the net pool before any funds go to the other general unsecured creditors as Debtor proposes, then only $9013.78 would be paid to general unsecured creditors, or approximately 13.84%. The difference between the 71.03% dividend and the 13.84% dividend is $37,249.55. Debtor does not challenge these calculations from the Trustee in his response brief.

## II.   Analysis

Plan confirmation is a contested matter, and a core proceeding over which this Court may exercise subject matter jurisdiction.[7] Debtor, as proponent of his Chapter 13 plan, bears the burden of proof to show that his plan meets the requirements for confirmation found in § 1325(a).[8]

---

[7] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[8] *Alexander v. Hardeman (In re Alexander)*, 363 B.R. 917, 921–22 (10th Cir. BAP 2007) (noting that "courts have concluded that the proponent of a Chapter 13 plan has the burden of proof to show that the § 1325(a) tests have been met" and agreeing with that line of cases).

## A. Unfair Discrimination

Section 1322(b)(1) permits a plan to designate classes of unsecured claims, as long as the plan does "not discriminate unfairly against any class so designated." In other words, the Code "permits the designation of separate classes of unsecured claims and different treatment of the separate classes, as long as the classification does not cause 'unfair' discrimination."[9] This Court has "wide discretion" to determine whether a plan's proposed discrimination is "unfair" discrimination.[10]

The Code does not define "unfair" discrimination. This Court has recently considered the issue in *In re Salazar*.[11] In *Salazar*, the below-median Chapter 13 debtor proposed a plan that placed her student loans in a special class.[12] Like here, after paying her attorney's fee and the filing fee, the debtor planned to next pay her student loan creditor, rather than have the available funds distributed pro rata among all the debtor's unsecured creditors.[13] Like the Debtor here, the debtor in *Salazar* did not have discretionary income with which to pay student loan creditors above the "disposable income" the Code

---

[9] *In re Knowles*, 501 B.R. 409, 415 (Bankr. D. Kan. 2013).
[10] *Id.*
[11] 543 B.R. 669 (Bankr. D. Kan. 2015). Neither the Trustee nor Debtor's counsel cite the case in their briefing.
[12] *Id.* at 671.
[13] *Id.*

declares a debtor to have.[14] The Court first noted the quandary for debtors: "Congress has been sufficiently concerned about student loan debts to make them usually not dischargeable in Chapter 13, but not concerned enough to give them payment priority over other unsecured debts."[15]

The Court in *Salazar* first addressed the two main tests that have been used to determine whether proposed discrimination in a plan is fair: the *Leser/Wolff*[16] test and the *Bentley*[17] test.[18] This Court rejected the *Leser/Wolff* test—a multi-factor test looking at reasonableness, good faith, and the rationale for the discrimination—because the Court thought the test did "not appear to supply any firm guidance for determining when discrimination proposed by a Chapter 13 plan crosses the line between fairness and unfairness."[19] The Court then adopted the *Bentley* test, noting case law that called it "the one that best reflected the aims of the Bankruptcy Code."[20]

---

[14] *Id.* at 673.
[15] *Id.* at 670.
[16] The *Leser/Wolff* test is named for *Mickelson v. Leser (In re Leser)*, 939 F.2d 669, 672 (8th Cir. 1991) and *AMFAC Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982).
[17] *Bentley v. Boyajian* (*In re Bentley*), 266 B.R. 229 (1st Cir. 2001).
[18] *Id.* at 673-74.
[19] *Id.* at 673.
[20] *Id.* at 674.

In *In re Knowles*,[21] another Judge in this District addressed efforts to grant student loans preferential treatment in a Chapter 13 plan, and described the *Bentley* test as directing courts "to look to 'the principles and structure of Chapter 13 itself' for 'the baseline against which to evaluate discriminatory provisions for fairness.'"[22] The Court in *Knowles* stated that four factors should be viewed: "(1) equality of distribution; (2) nonpriority of student loans; (3) mandatory versus optional contributions (a comparison of what the dischargeable unsecured creditors would receive in a pro rata distribution of the mandatory contribution under chapter 13); and (4) the debtor's fresh start."[23] Based on those four factors,

> 'When a plan prescribes different treatment for two classes but, despite the differences, offers to each class benefits and burdens that are equivalent to those it would receive at the [statutory] baseline, then the discrimination is fair. On the other hand, when the discrimination alters the allocation of benefits and burdens to the detriment of one class, the discrimination is unfair and prohibited.'[24]

Ultimately, the court in *Knowles* concluded that it was not unfair discrimination for an above-median debtor to make direct payments to

---

[21] 501 B.R. 409 (Bankr. D. Kan. 2013) (Karlin, J.).
[22] *Id.* at 415 (quoting *In re Bentley*, 266 B.R. at 240).
[23] *Id.* at 415-16 (citing *In re Bentley*, 266 B.R. at 240-42).
[24] *Id.* at 416 (quoting *In re Bentley*, 266 B.R. at 240).

student loan creditors from discretionary income the Bankruptcy Code did not require them to pay into their plan.[25]

Applying the *Bentley* test, this Court in *Salazar* determined that the debtor's proposed discrimination therein was unfair.[26] The Court concluded that the debtor's proposed plan did not "honor the Code's requirement of equality of distribution among her unsecured creditors."[27] The debtor's student loans were not "entitled to priority under § 507(a)" and the debtor did not show "that equitable subordination should be applied to her other unsecured claims under § 510(c)."[28] Recognizing that the debtor's student loans were most likely nondischargeable under § 523(a)(8), the Court noted two things: (1) a nondischargeable student loan "does not mean [the student loans] have priority over [the debtor's] other unsecured claims and nothing else in the Bankruptcy Code justifies treating [student loans] more favorably than those other claims" and (2) "[a]lthough the Debtor's potential fresh start would be improved if she were allowed to direct all the unsecured creditors' share of her projected disposable income to her student loan creditor alone, a Chapter 13 fresh start does not guarantee that a debtor will emerge from

---

[25] *Id.* at 413-14.
[26] *In re Salazar*, 543 B.R. at 675.
[27] *Id.*
[28] *Id.*

Chapter 13 free from all debts, but only from those that are not entitled to priority and are not excepted from discharge."[29]

Finally, this Court in *Salazar* considered a comparison of what the debtor's general unsecured creditors would receive if the discrimination were not permitted, and noted that the debtor's proposal to not pay general unsecured creditors pro rata was an effort "to rearrange the priorities Congress established in Chapter 13," which was "simply not permissible."[30] The Court then stated:

> While it is true that the requirement for the Debtor's other nonpriority unsecured creditors to share pro rata with her student loan creditor in any distributions that may be available from the contributions Chapter 13 requires her to make to her plan will leave her owing a larger student loan debt if she completes her plan than she would owe if her proposal were accepted, this is a consequence of Congress's clear decision to make student loans nondischargeable, but to not make them priority claims.[31]

The Court expressed sympathy for the debtor's plight in *Salazar*, but acknowledged only Congress could change what the current system required of debtors.[32]

---

[29] *Id.*
[30] *Id.* at 676.
[31] *Id.*
[32] *Id.*

## B. Case Law in this District Since *Salazar*: *In re Engen*

Since this Judge issued the decision in *Salazar*, a fellow Judge of this Court has issued a decision in a similar case but found no unfair discrimination, and it is this newer decision that Debtor rests his argument on. In *In re Engen*,[33] the above median income debtors filed a Chapter 13 plan that paid administrative expenses, secured mortgage debt, a secured auto loan, and priority tax claims, and then placed student loan debt into a special class that would be paid before other general unsecured claims.[34] The Court found it significant that prior to filing, the debtors participated in a debt management plan whereby they disbursed over $78,000 to non-student loan general unsecured creditors.[35]

The Court in *Engen* discussed the presumed nondischargeability of student loans in bankruptcy, and the potential pitfalls that can cause,[36] and analyzed the different tests that have evolved when considering whether placing student loans into a separate class from general unsecured claims is

---

[33] 561 B.R. 523 (Bankr. D. Kan. 2016) (Berger, J.).
[34] *Id.* at 525-26.
[35] *Id.* at 527-28.
[36] *Id.* at 531.

unfair discrimination.[37] Ultimately, like in *Salazar* and *Knowles*, the *Engen* Court applied the *Bentley* test, and concluded that the proposed discrimination in the plan therein was not unfair.[38] The Court emphasized that the debtors' "non-student loan unsecured creditors received a significant prepetition dividend that discriminated against the Student Loan Claims," receiving a prepetition dividend of eighty three percent.[39] The Court also considered the fact that the debtors' student loans were nondischargeable, and rejected the argument that nondischargeability, without more, is an insufficient reason for discriminating in favor of student loan claims,[40] but ultimately did not rest on that factor alone to support its holding. The Court in *Engen* noted that any assessment of a separate classification would have to "accurately contemplate[] the facts of [each] case."[41]

Although the decisions are fairly uniform against separate classification,[42] this Court agrees with *Engen* that each case will have to be

---

[37] *Id.* at 534-38.
[38] *Id.* at 539.
[39] *Id.*
[40] *Id.* at 541.
[41] *Id.* at 539.
[42] There are far too many cases addressing the same issue as herein to detail them all here. But in general, the decisions issued after appeal have uniformly rejected the proposal. *See, e.g.*, *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215-16 (8th Cir. 1994) (affirming bankruptcy court that payment in full of student loan and only forty percent of other unsecured claims is unfair and stating that "the nondischargeability of student loan claims, by itself, does not justify substantial

analyzed separately to determine whether discrimination in favor of student loan creditors is unfair under the *Bentley* test.

C.     **Application to Debtor's Proposed Plan**

Debtor proposes to pay his student loan creditors before his other general unsecured debt: he proposes to pay the student loan in full, but pay only an approximately fourteen percent dividend to his other general unsecured creditors. The differences are fairly stark in this case: if Debtor were to pay all unsecured claims pro rata, then the pro rata share to all unsecured claims would be seventy one percent. If, however, the student loan is paid one hundred percent from the net pool before any funds go to the other general unsecured creditors, as Debtor proposes, then, as stated above, general unsecured creditors would receive about a fourteen percent dividend.

---

discrimination against other, dischargeable unsecured claims in a Chapter 13 plan"); *Marshall v. Belda (In re Belda)*, 315 B.R. 477, 486-87 (N.D. Ill. 2004) (reversing bankruptcy court and concluding that plan that would give sixty two percent dividend to student loan creditor but only ten percent dividend to other general unsecured creditors was unfair discrimination); *Eck v. Willis (In re Willis)*, 197 B.R. 912, 915 (N.D. Okla. 1996) (reversing decision of bankruptcy court and concluding that plan paying student loans in full but only ten percent of other unsecured nonprioirity claims was unfair discrimination); *Groves v. LaBarge*, 160 B.R. 121, 123 (E.D. Mo. 1993) (affirming bankruptcy court decision that plan proposing to pay student loans in full but only paying ten to forty percent to other unsecured claims was unfair discrimination); *McCullough v. Brown (In re Brown)*, 162 B.R. 506, 517-18 (N.D. Ill. 1993) (reversing bankruptcy court and concluding that plan providing for student loan to be paid in full but only paying ten to twenty percent of other general unsecured claims was unfair discrimination).

13
Case 19-40170   Doc# 32   Filed 06/18/19   Page 13 of 16

The following are the factors addressed in *Bentley* for analyzing Debtor's proposed discrimination: "(1) equality of distribution; (2) nonpriority of student loans; (3) mandatory versus optional contributions (a comparison of what the dischargeable unsecured creditors would receive in a pro rata distribution of the mandatory contribution under chapter 13); and (4) the debtor's fresh start."[43]

Obviously, regarding the first factor and third factor, there is no equality of distribution herein and no additional funds contributed beyond what is required by the Code. The difference between the distribution caused by the proposed discrimination is the difference between a seventy one percent distribution and a fourteen percent distribution. Unlike in this case, it is this factor that swayed the Court in *Engen*: the debtor therein had made substantial payments to the general unsecured debt that was being discriminated against by the debtor's plan. That is simply not the situation herein. Debtor asks why this should mater? But it matters because it means there is nothing equalizing distribution in this case, and therefore this factor weighs in favor of finding unfair discrimination.

---

[43] *In re Knowles*, 501 B.R. at 415-16 (citing *In re Bentley*, 266 B.R. at 240-42).

Regarding the second factor, as discussed in *Salazar*, Congress, however wisely, has chosen to make student loans nonpriority debt, despite being presumptively nondischargeable. As a result, there is nothing in the Code that justifies treating the student loan claims more favorably than other claims, and the second *Bentley* factor therefore weighs in favor of finding unfair discrimination as well.

The fourth factor asks for an analysis of the debtor's fresh start post-bankruptcy. Debtor's student loans are presumptively nondischargeable in his Chapter 13 case. As the Court noted in *Engen*, adversary proceedings seeking an undue hardship discharge of student loans under § 523(a)(8) are "expensive," "demanding," and "challenging and confusing for debtors."[44] And there is no doubt that Debtor's fresh start will be hampered by the significant student loan debt that will survive his bankruptcy. The Court in *Bentley* discounted the impact the nondischargeability of student loans would have on a debtor's fresh start, but for this Court, this factor weighs in favor of finding that the proposed discrimination is not unfair.

The balance of the four factors, however, shows that the proposed discrimination in favor of Debtor's student loan claims cannot be permitted

---

[44] *In re Engen*, 561 B.R. at 531.

under the current Code. As the Court stated in *Bentley*, when proposed discrimination "alters the allocation of benefits and burdens to the detriment of one class, the discrimination is unfair and prohibited."[45] The balance of factors here shows that Debtor's proposed discrimination in favor of his student loan claims would aid his fresh start, but in doing so would significantly burden the class of unsecured creditors in his case.

### III. Conclusion

The Trustee's objection to confirmation of Debtor's plan on the basis of unfair discrimination under § 1322(b)(1) is sustained. Debtor has not carried his burden to show his current plan is confirmable. Debtor should file an amended Chapter 13 plan conforming to the holding of this Opinion within twenty-one days.

**It is so Ordered**.

### # # #

---

[45] *In re Bentley*, 266 B.R. at 240.